[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON DEFENDANTS' MOTION TO STRIKE (#109)
The plaintiff Nemeth/Martin Consulting, Inc. ("Nemeth") has brought suit against the defendants Excel Data Systems, Inc. ("Excel") and Carl Sastram ("Sastram") alleging breach of contract, tortious interference with business expectancies, and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). The defendants have moved to strike all counts of the revised complaint dated January 28, 2002.
 — I —
"[A] motion to strike challenges the legal sufficiency of a pleading. . . ." (Internal quotation marks omitted.) Doe v. YaleUniversity, 252 Conn. 641, 667, 748 A.2d 834 (2000); see also Practice Book § 10-39. The court "must take as true, the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. (Internal quotation marks omitted.)Doe v. Yale University, supra, 252 Conn. 667. "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Id. "A motion to strike, [however], is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix MedicalSystems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25
(1992). CT Page 4609
In its complaint, Nemeth alleges the following facts: On or about September 18, 1995, Nemeth and Excel entered into a written agreement in which Nemeth, as a marketing agent, agreed to provide the services of Excel's representative, Sastram, to its client, Emhart Industrial Division, Pop Fasteners ("Pop Fasteners"). (Count One, ¶ 4). Although the written agreement provided for a one year term, the parties continued to perform under the same terms and conditions through the date of the complaint. (Id., ¶ 5). Among the terms and conditions, Excel agreed that neither it nor its consultant would solicit or accept business or employment with Pop Fasteners or engage in any competitive remunerative activities of any kind with it. (Id., ¶ 7). Excel, acting through Sastram, violated its agreement with Nemeth by soliciting business from and entering into contracts with Pop Fastener and has engaged consultants to perform competitive services for Pop Fasteners on diverse dates from September 18, 1995 to date, including engaging "former employess of Pop Fasteners to serve a consultants performing AS400 services for Pop Fasteners." (Id., ¶ 8) By "providing consultants to perform competitive remunerative services to Pop Fasteners," Excel and Sastram prevented Nemeth "from acquiring or continuing its prospective business relations with Pop Fasteners." (Count Two, ¶ 12).
 — II —
A. First Count
The first count alleges a breach of contract on the part of Excel.[1]
Excel claims that the allegations of the first count are insufficient because the parol evidence rule would bar Nemeth from introducing evidence to contradict the terms of the written agreement between the parties that expired by its own terms on September 18, 1996. Nemeth counters that it does not seek to contradict the terms of the written agreement and that the first count alleges breach of a subsequent implied contract between the parties to engage in business under the same terms as the expired written agreement.
"A contract is an agreement between parties whereby one of them acquires a right to an act by the other; and the other assumes an obligation to perform that act. . . . Contracts may be express or implied. These terms, however, do not denote different kinds of contracts, but have reference to the evidence by which the agreement between the parties is shown. If the agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one. But if such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances, then the contract is an implied one." Skelly v. Bristol Savings Bank, 63 Conn. 83, 87, 26 A. 474 (1893); CT Page 4610 see Boland v. Catalano, 202 Conn. 333, 337, 521 A.2d 142 (1987). To state a cause of action for an implied contract, the complaint must allege that the parties agreed, "either by words or action or conduct, to undertake any form of actual contractual commitment. . . ." Therrien v. SafeguardManufacturing Co., 180 Conn. 91, 94-95, 429 A.2d 808 (1980). In the first count, the complaint alleges that although the original written agreement provided for a one year term, "the parties have continued to perform to this day under the same terms and conditions as spelled out in the Agreement. By so doing, the parties have assented to the continuation of the Agreement." This allegation is sufficient to defeat the motion to strike the first count.
B. Second Count
The second count seeks to state a cause of action against both Excel and Sastram for tortious interference with business expectancies and alleges, in pertinent part, that they "intentionally and improperly interfered with the plaintiff's prospective contractual relationship with Pop Fasteners by providing consultants to perform competitive and remunerative services to Pop Fasteners" and, in so doing, "prevented the plaintiff from acquiring or continuing its prospective business relations with Pop Fasteners." (Count Two, ¶¶ 11, 12).
The cases recognize that not every interference in a business relationship rises to the level of tortious interference. Blake v. Levy,191 Conn. 257, 260, 464 A.2d 52 (1983). "[T]o prevail on a tortious interference claim, a plaintiff must prove interference that is wrongful by some measure beyond the fact of the interference itself" (Internal citations omitted; internal quotation mark omitted.) Downes-PattersonCorp. v. First National Supermarkets, Inc., 64 Conn. App. 417, 431,780 A.2d 967 (2001). In order to sufficiently allege tortious interference, the complaint must contain factual allegations of fraud, misrepresentation, intimidation or malice. Robert S. Weiss Associates,Inc. v. Wiederlight, 208 Conn. 525, 536, 546 A.2d 216 (1988). "The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification." (Internal quotation marks omitted.)Daley v. Aetna Life Casualty Co., 249 Conn. 766, 806, 734 A.2d 112
(1999).
Nemeth has failed to allege any facts that show tortious conduct on the part of Excel or Sastram. The conclusory allegations that the defendants acted intentionally and improperly are insufficient to meet the standard required to state a cause of action for tortious interference with business expectancies. Accordingly, the motion to strike the second count is granted. CT Page 4611
C. Third Count
In the third count, Nemeth restates the factual allegations of the first and second counts to allege a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a, et seq. The defendants have moved to strike the third count claiming the allegations do not satisfy the "cigarette rule" criteria. The "cigarette rule" contains three criteria by which a practice or act is deemed unfair. Finkv. Golenbock, 238 Conn. 183, 215, 680 A.2d 1243 (1996); SaturnConstruction Co. v. Premier Roofing Co., 238 Conn. 293, 310, 680 A.2d 1274
(1996); Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 507,656 A.2d 1009 (1995); Cheshire Mortgage Service, Inc. v. Montes,223 Conn. 80, 105-06, 612 A.2d 1130 (1992). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Citations omitted.) Jacobs v. Healey Ford-Subaru, Inc., 231 Conn. 707,725-26, 652 A.2d 496 (1995).
In its memorandum, Nemeth relies principally on the allegations of the second count to argue that it has adequately alleged an unfair or deceptive practice. Although the second count has been stricken, that might not be fatal because "[c]onduct that might be actionable under CUTPA may not rise to a level sufficient to invoke tort liability."Sportsmen's Boating Corp. v. Hensley, 192 Conn. 747, 756, 474 A.2d 780
(1984). Nonetheless, in this case the only conduct alleged against the defendants is that they solicited business from and entered into contracts with Pop Fasteners to provide it with consultants to perform competitive remunerative services in breach of their contract with Nemeth. Generally, a simple breach of contract does not amount to a CUTPA violation, Paulus v. Lasala, 56 Conn. App. 139, 153, 742 A.2d 379
(1999), in the absence of factual allegations of "substantial aggravating circumstances" or "fraudulent or deceptive practices or bad faith." EmleeEquipment Leasing Corp v. Waterbury Transmission, Inc., 41 Conn. Sup. 575,580, 595 A.2d 951 (1991); see Healthright v. Executive Risk SpecialtyInsurance., Superior Court, judicial district of New Haven at Meriden, Docket No. 0272486S (Jan. 12, 2001, Lager, J.) and cases cited therein. There are no such allegations in this complaint. Accordingly, the motion to strike the third count is granted.
— III —
For the foregoing reasons, the defendants' motion to strike the first CT Page 4612 count is denied. The defendants' motion to strike the second and third counts is granted.
LINDA K. LAGER, JUDGE